IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| HAAK MOTORS, LLC | * | |
| v. | * | Civil No. JFM-13-2068 |
| TD AUTO FINANCE LLC, *et al.* | * | |

******

**MEMORANDUM**

Plaintiff Haak Motors brings this suit against defendant Len Stoler, Inc., ("Stoler") for alleged negligence and conversion. Stoler now moves to dismiss, or in the alternative, for summary judgment. The parties have fully briefed the issues and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion will be granted.

**BACKGROUND**

Lloyd Haak ("Haak") began operating a Chrysler Motors dealership in Baltimore County, Maryland in 2002. Six years later, he agreed to sell the dealership to William Ackridge ("Ackridge"), who assumed control of the entity on June 1, 2008. When Ackridge subsequently failed to pay Haak for the dealership and its assets, Haak successfully pursued an action in the Circuit Court for Queen Anne's County and regained possession of the dealership on August 19, 2008. In the interim period between June 1 and August 19, however, Ackridge initiated at least fifty-seven deals involving vehicles at the dealership, many of them "buy here pay here" ("BHPH") transactions, secured by liens in favor of TD Auto Finance LLC ("TDAF"). As Haak discovered when he repossessed the dealership, these transactions were deficient in several respects. Specifically, Haak recounts that "there were …. [f]ifty-seven problems of cars that

1

were traded and not paid off, cars that were financed that shouldn't have been, cash taken and not re-put in the dealership, endless number of things . . . . " (Haak Dep. 52: 10–14; ECF No. 40-2). According to Haak, Ackridge also improperly recorded these vehicles' registrations, liens, titles, tags, "everything." (Haak Dep. 52: 18–21; ECF No. 40-2).

In one such example, Ackridge sold a 2006 Dodge Dakota to Latora Ackridge, which TDAF secured with a lien. A little over a year later, however, Latora Ackridge used a fraudulent security interest filing ("SIF") and lien release letter to trade the Dakota to Stoler, in partial payment for a 2009 Hyundai Santa Fe. Dated September 8, 2009—three days before Latora sought to trade in the car—the fraudulent lien release represents that: (1) Latora Ackridge purchased the Dakota from Ackridge; (2) Ackridge Auto Group financed the purchase; and (3) Latora paid for the car in full and owed no outstanding debt to Ackridge or Ackridge Auto Group.

In fact, TDAF—not Ackridge Auto Group—was the legitimate secured party on the Dakota, Latora Ackridge had not paid for the car in full, and she was obligated to continue making payments to TDAF. Because the fraudulent letter allegedly: (1) did not contain an SIF from Ackridge terminating the lien; (2) was issued by a dealership instead of a financial institution; (3) was not notarized; (4) was dated only a few days prior to Latora Ackridge's negotiations with Stoler; (5) revealed two different addresses for Latora; and (6) showed that Latora had the same last name as the dealership issuing the lien release, Haak alleges that these irregularities should have alerted Stoler to the possibility that Latora Ackridge's lien release was fraudulent. In Haak's view, Stoler should have independently verified the legitimacy of the lien release letter and confirmed the identity of the secured party with the Maryland Motor Vehicle

2

Administration ("MVA"). Instead, Stoler allegedly accepted the Dakota, along with fraudulent lien release, as partial payment for the Santa Fe. Stoler then resold the Dakota to a third party.

In the meantime, as Haak sought to resolve the issues caused by Ackridge's tenure at the dealership, a dispute arose between Haak and TDAF regarding the storage fees for the vehicles on the premises. To resolve this dispute, Haak and TDAF reached a Settlement and Mutual Release Agreement on June 9, 2010. Pursuant to this Agreement, TDAF assigned to Haak "all the BHPH Deals set forth on Exhibit 1 . . . as well as all contract, lien and other rights in said BHPH Deals to Haak, without representation or warranty." (Settlement Agreement ¶ 20; ECF No. 17-4 at 2). Latora Ackridge's Dakota was one of the BHPH deals included in the settlement.

According to Haak, although he had the opportunity to review and / or investigate the various records relating to each BHPH deal prior to the finalization of the settlement agreement—including: buyer's orders, retail installment contracts, and applications for title—he saw no reason to do so, despite knowing, as of August 2008, that the records for most of the transactions were deficient in some respects and that Ackridge had acted fraudulently in other instances regarding the dealership's operations. (Haak Dep. 63: 8–18; ECF No. 40-2). TDAF nevertheless informed Haak that (1) it did not possess the sales contract for the 2006 Dakota; (2) the lien on the Dakota was for $11,539.50; and (3) Latora Ackridge had made no payments on the loan and was not scheduled for any payments in the future. (Overcashier Aff. at 2; ECF No. 17-5).

Still, in the aftermath of its agreement with TDAF, Haak took no steps to contact Latora Ackridge—or any of the BHPH customers—in order to notify her that he had acquired the rights to the lien. Instead, he testified that he expected TDAF to initiate this process, despite the fact

3

that TDAF had allegedly failed, on multiple occasions, to keep him apprised of the status of the liens on the BHPH deals. As Haak explained, "I knew I had these liens, okay, I knew those cars were there. I just didn't have time to get to it. . . . I attempted to start doing it, but time just didn't allow. I mean, you can only do so much in 24 hours." (Haak Dep. 71: 8–15; ECF No. 40-2). Unsure of whether TDAF had notified the BHPH customers regarding Haak's rights to the account, Haak still declined to follow up with TDAF in 2010 and 2011, even when he failed to receive any of the expected payments on the liens. (Haak Dep. 80: 9–12; ECF No. 41-3).[1] Haak ultimately requested the books and records for the BHPH deals in January 2013. Nine months later, in November 2013, Haak learned that Latora Ackridge had traded in her Dakota to Stoler, and that Stoler had subsequently resold the car to a bona fide purchaser in Pennsylvania.

As a result of this and other problems arising from the liens on the BHPH deals, Haak filed a complaint against TDAF in the Circuit Court for Baltimore County, claiming damages for breach of contract, unjust enrichment, negligent misrepresentation, and conversion, while also seeking an accounting, constructive trust and specific performance. On July 17, 2013, TDAF removed the suit to this court on the basis of diversity jurisdiction. (ECF No. 1). On January 8, 2014, Haak filed an amended complaint joining Stoler as a defendant. Because it maintains that Stoler (1) negligently permitted Latora Ackridge to trade in the Dakota with a fraudulently obtained lien release and (2) subsequently destroyed Haak Motor's rights in the lien by reselling the car, Haak seeks damages against Stoler in the amount of $9,000 for negligence and

---

[1] When asked why he failed to contact TDAF, after discovering that he needed the lien releases from TDAF in order to investigate the tag and title information for the vehicles, Haak responded, "simply lack of time." (Haak Dep. 81:16; ECF No. 41-3).

4

conversion.  Stoler moved for summary judgment, or in the alternative to dismiss, on May 16, 2014.[2]

## STANDARD

Under Rule 12(b)(6), a motion to dismiss should be treated as a motion for summary judgment when the motion to dismiss, or exhibits in the record, present matters outside the nonmoving party's pleadings and the court does not exclude such matters.  Fed.R.Civ.P. 12(b)(6).  I will treat Stoler's motion as a motion for summary judgment because it requires me to look beyond the four corners of the complaint.

According to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to ... the nonmovant,

---

[2] After a successful settlement conference on July 10, 2014, Haak and TDAF filed a stipulation of dismissal, on September 3, 2014, with respect to Haak's claims against TDAF only.

and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *See Dennis v. Columbia Colleton Medical Ctr., Inc*., 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *See Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted)).

## ANALYSIS

As a preliminary matter, because Haak acquired the rights to the BHPH liens from TDAF nearly four years before filing a claim against Stoler, Stoler argues that Haak's claims are time-barred. I agree.

In Maryland, a civil action must be filed within three years of the date when the cause of action accrues. Md.Code Ann., Cts. & Jud. Proc. § 5–101; *see also Rockstroh v. A.H. Robins Co., Inc.*, 602 F.Supp. 1259, 1262 (D.Md. 1985) (observing Maryland law governs the applicability of the statute of limitations in cases based in diversity jurisdiction). This rule exists to assure fairness to defendants and to "promote justice by preventing surprises through the revival of claims that had been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Furst v. Isom*, 584 A.2d 108, 112 (Md.Ct.Spec.App. 1991). To this end, Maryland's three year limitations period reflects the legislature's judgment regarding what constitutes an adequate period of time for a person of ordinary diligence to bring his action. *Grand-Pierre v. Montgomery Cnty.*, 627 A.2d 550, 552–53 (Md.Ct.Spec.App. 1993) (citation omitted).

Because the statute of limitations is an affirmative defense, however, the burden is on the party asserting the defense—here, Stoler—to prove that the cause of action accrued prior to the

statutory time limit for filing a claim.  *See Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152 (1991).  A cause of action accrues when the plaintiff in fact knew, or reasonably should have known of the wrong.  *Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, 848 F.Supp.2d 570, 579 (D.Md. 2012) (citation omitted).  To determine when precisely this occurs, courts have applied the "inquiry notice" test.  According to the inquiry notice test, a plaintiff's claim starts to accrue when he "has knowledge of circumstances which would cause a reasonable person in his position to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged cause of action." *Anne Arundel Cnty., Md. v. Halle Dev., Inc.*, 408 Md. 539, 562 (2009).  In this way, plaintiffs on "inquiry notice" have a duty to seek out the facts that support their claim.  *See Edwards v. Demedis*, 118 Md.App. 541, 553 (1997).

Haak alleges—but provides no evidence to demonstrate—that he did not discover that TDAF's lien on the Dodge Dakota was nullified by Stoler's resale of the car to a bona fide purchaser until around November 12, 2013.  According to Haak, it could not have known about Stoler's alleged wrong until it obtained a CarFax report on the Dakota, and it had no reason to order a CarFax report until TDAF assigned the car's SIF to Haak.  Even then, Haak asserts, he was not on notice of his prospective claim until he subpoenaed Stoler and obtained the records relating to the vehicle.  I disagree.

In June 2010, when TDAF assigned the liens on the BHPH deals to Haak Motors, Lloyd Haak knew that (1) Latora Ackridge had made no payments on the loan; (2) no future payments were scheduled; and (3) TDAF did not possess the sales contract for the vehicle.  Haak also knew, from September 2008 onward, that Ackridge's management of the dealership from June to August 2008 involved several instances of fraudulent behavior.  As he suggests in his testimony, Haak was aware that, during Ackridge's three month tenure, "cars … were traded and not paid

7

Case 1:13-cv-02068-JFM   Document 44   Filed 09/09/14   Page 8 of 9


off, cars … were financed that shouldn't have been, cash [was] taken and not re-put in the dealership, endless number of things . . . . " (Haak Dep. 52: 10–14; ECF No. 40-2). Moreover, as his settlement negotiations and ultimate agreement with TDAF revealed, the BHPH deals brokered by Ackridge suffered from defective registrations, liens, titles, and tags. The problematic nature of the BHPH liens became even clearer throughout 2010 and 2011, when Haak received no payments on the outstanding loans. According to his testimony, upon obtaining the rights to the BHPH liens, Haak understood the importance of investigating their status, conceding that "It was a priority . . . I knew I had these liens, okay . . . . I just didn't have time to get to it. . . . I attempted to start doing it, but time just didn't allow." (Haak Dep. 71: 8–15; ECF No. 40-2). Haak also admits that, after he failed to receive lien payments from TDAF and the BHPH customers during 2010 and 2011, he knew that he needed to seek out and obtain the relevant records for each vehicle in order to protect his rights. Ultimately, however, he failed to conduct an investigation that could have revealed the full extent of the alleged wrong because of a "lack of time." (Haak Dep. 81:16; ECF No. 41-3).

In light of these facts—facts that Haak does not dispute—a reasonable person in Haak's position would have initiated an investigation into the BHPH deal for Latora Ackridge's Dodge Dakota following the transfer of the lien rights from TDAF to Haak Motors in June 2010, if not before. As a result, Haak Motors was on inquiry notice of the precarious status of its rights well before the end of the limitations period. Haak Motors does not argue that it is entitled to equitable tolling. Rather, Haak suggests that his claim accrued when it became convenient for him to follow up on the myriad red flags surrounding the lien on the Dakota—red flags he was exposed to, but ignored, for over three years. To accept this argument, however, would permit Haak Motors to extend the limitations period for an indefinite period of time. *See Theune v. U.S.*

off, cars … were financed that shouldn't have been, cash [was] taken and not re-put in the dealership, endless number of things . . . . " (Haak Dep. 52: 10–14; ECF No. 40-2). Moreover, as his settlement negotiations and ultimate agreement with TDAF revealed, the BHPH deals brokered by Ackridge suffered from defective registrations, liens, titles, and tags. The problematic nature of the BHPH liens became even clearer throughout 2010 and 2011, when Haak received no payments on the outstanding loans. According to his testimony, upon obtaining the rights to the BHPH liens, Haak understood the importance of investigating their status, conceding that "It was a priority . . . I knew I had these liens, okay . . . . I just didn't have time to get to it. . . . I attempted to start doing it, but time just didn't allow." (Haak Dep. 71: 8–15; ECF No. 40-2). Haak also admits that, after he failed to receive lien payments from TDAF and the BHPH customers during 2010 and 2011, he knew that he needed to seek out and obtain the relevant records for each vehicle in order to protect his rights. Ultimately, however, he failed to conduct an investigation that could have revealed the full extent of the alleged wrong because of a "lack of time." (Haak Dep. 81:16; ECF No. 41-3).

In light of these facts—facts that Haak does not dispute—a reasonable person in Haak's position would have initiated an investigation into the BHPH deal for Latora Ackridge's Dodge Dakota following the transfer of the lien rights from TDAF to Haak Motors in June 2010, if not before. As a result, Haak Motors was on inquiry notice of the precarious status of its rights well before the end of the limitations period. Haak Motors does not argue that it is entitled to equitable tolling. Rather, Haak suggests that his claim accrued when it became convenient for him to follow up on the myriad red flags surrounding the lien on the Dakota—red flags he was exposed to, but ignored, for over three years. To accept this argument, however, would permit Haak Motors to extend the limitations period for an indefinite period of time. *See Theune v. U.S.*

*Bank, N.A.*, No. MJG-13-1015, 2014 WL 3829190 at * 6 (D. Md. Aug. 1, 2014) (citations omitted). I decline to undermine the core values of repose underlying the Maryland statute of limitations in this manner. Rather, I find that because Haak waited until early 2014 to bring a claim against Stoler—nearly four years after his cause of action accrued—his claims are now time-barred.[3]

## CONCLUSION

For the aforementioned reasons, Stoler's motion for summary judgment is granted. A separate order closing the case follows.

Date: \_\_\_/s/_____

J. Frederick Motz

United States District Judge

---

[3] In light of my finding that Haak's cause of action is time-barred, I need not decide Stoler's arguments that, even if Haak's claims were timely, they do not survive summary judgment.

9